1834-69 Lawrence Bartell v. LTF Club Operations Company, Inc. Arguments not to exceed 15 minutes per side. Mr. Van Oort for the appellant. Judge Keith is honoring us with his presence by video, so be sure to speak up so that the video transmission can be heard. Thank you, Your Honor. I'll do that. And Judge Keith, if you have trouble hearing me, please let me know and I'll get even louder. Good morning, Your Honors. May it please the Court. I'm Aaron Van Oort, representing Lifetime Fitness here. I reserve four minutes for rebuttal. This is a class action brought under the Consumer Sales Protection Act to enforce the provisions of the Prepaid Employment Contracts Act, which I'm going to call PICA. The remedy being sought here is the rescission of more than 40,000 fitness contracts after they were already performed, which would result in a refund of up to $120 million in dues. That's the remedy being sought. The reason for this remedy is that although Lifetime Fitness at all times gave its members a 14-day free look period at the beginning, it did not give them a duplicate tear-off notice of a three-day look period. And the argument is that because it didn't do that, therefore all of these results follow. On appeal, we have two arguments, two reasons why we think that's not the right result. The first reason... Is it...at issue is not just the notice provision, though, correct? The tear-off, that's part of it. But isn't what the court below said that the problem is the cancellation honoring and refund provisions already issued. Isn't that correct? You're right, Your Honor, that the way the district court found Article III standing, which is one of the two, is to say that because the remedy of the refund had not been provided, that created a harm. Our view is that under Macy and Spokue and all the other precedents, that the harm creating Article III standing has to come from the initial violation. And that you can't piggyback the lack of a remedy to create the harm. Otherwise, there'd be no effective limits at all on standing. Just to go back, you know, in terms of the two issues, one of the issues that we have is the Ohio State substantive law issue. And that is that under the Consumer Sales Protection Act, only actual damages can be sought in a class action. That's the holding of the Ohio Supreme Court. And 30 years of Ohio precedent holds that a rescission and refund is not actual damages, with zero exceptions. And so our view is that the rescission can't be awarded in a class action on that. That's the substantive law. The substantive law that you're referring to is that, are you in the Home Solicitation Sales Act comparator, or are you in a different arena of Ohio law? No, where we are, Your Honor, is the Consumer Sales Protection Act. And let me just walk through this, on this, because I don't think very many parts of that are in dispute. First of all, the Ohio Supreme Court in Felix, just a few years ago in 2015, held that the Consumer Sales Protection Act limits the damages available in class actions to actual damages. That's the holding of the Ohio Supreme Court. And then this court followed up in Gerbach a couple of years later, and says that the CSP does not entitle a class to recover non-economic damages, it entitles them to recover actual damages. So binding Ohio law says in a class action under the Consumer Sales Protection Act, all you can get is actual damages. And then in our briefs, we cited literally nine cases over 30 years, starting in 1989 and coming all the way up to now, that says rescission is not actual damages. In fact, it's mutually exclusive with actual damages, because rescission unwinds a contract and brings you backwards to where you started, and damages enforces the contract. But didn't the contracts themselves provide for a monetary penalty? And why wouldn't that monetary penalty and any enhancement of it constitute an actual damage? I mean, wasn't there $10 and something? Your Honor, the Ohio courts have addressed this directly, in distinguishing between actual damages and non-actual damages. And they've held that, for example, the $200 statutory penalty is not actual damages. They've held that, and I understand the plaintiffs here to concede, that the double refund is not actual damages, and all of that. The real fight, the real point of contention, as I understand it, is whether the refund is actual damages on that. And how, then, do you categorize the refund of past dues with the additional charge of $126 beyond the time period that there was a request for cancellation? No, that's right, Your Honor, and here's our view on that. Mr. Bartel conceded in his deposition that all of the money he was charged was appropriate under the contract. He was charged after he canceled? Absolutely, and let me just point you directly, it's record item 79, that's where his deposition transcript shows up, and the page IDs on this, the specific ones, are 1754 and 1776. And what he agreed is, he said, yeah, I agreed to this contract. I agreed that I would have to give 30 days notice to cancel down the road, not right away. I mean, 14 days was a free look, but he agreed. And so on those pages, he was asked, do you agree that these charges were appropriate under the contract? He said yes. His claim was that he got to undo the contract. And so whether it was the dues that he paid for the first three and a half years while he was enjoying it, or the dues that he paid the last month when he would have rather canceled right away, he agrees that all of that was appropriate under the contract, and he agreed to it. And in a way, that begs the question, though, because then the question is, is this governed by contract law, or are we in PICA and the Consumer Protection Act? And are those remedies distinct? Yeah, you're right, Your Honor, and here's what the cases say. And like I said, the plaintiffs have cited literally zero cases in Ohio, zero, holding that a rescission and a refund is actual damages. And you can ask him this morning if they found another case. I don't think they have, and we cited nine. We could have cited a dozen. We could have cited 20, saying that a rescission and a refund is not. And, you know, I can just, let me just go to this. The first case, the earliest one we cite is the Mid-America case from 1989. And what this says is the actual damages referred to in Section 134509B, that's the provision that we're under here, represent the legislature's codification of the common law election between rescission, on the one hand, and retention of the contract while recovering damages, on the other hand. Thus, 134509, that's again our provision, B, allows the consumer either to rescind the contract or retain it and sue for damages. What do you, how do you respond to Broglie? To what, Your Honor? To Broglie, the case strictly enforced by the Ohio courts? Yeah. Broglie, Your Honor, doesn't, isn't at all inconsistent with the choice between rescission and actual damages. Well, I thought there was, there was a distinction. Walk through that because it seemed to me that Broglie addressed the issue to show that it's actual damages and was distinguishable from some of the other cases that you cited. I think the, is it Toad's used cars, where there was no refund provision in the statute? Gerbach, where we were also in a different situation there. Whitaker, there were several cited that are distinct from this, or at least your opposing counsel argues are distinct, because they, because the statutory provisions under which they're operating did not have the provisions that PICA has. Yeah. Now, why, why is, you know, educate me, is that incorrect? Yeah, Your Honor, I think what they're saying is that some of those cases drew this distinction between rescission and actual damages in contexts outside of PICA. And we agree that the principle holds there, too. It actually goes back to the 1800s in the common law. That's where it came from. But PICA codified it. That's what the Ohio cases say. And so we've cited that all of these other cases did apply this distinction in statutes that do provide for cancellation and rescission. So, for instance, the most recent one from 2016 is Smith v. SAC. That was the Home Sales, Home Solicitation Sales Act, which also has a right to cancel and then is enforced through the Consumer Sales Protection Act, just like PICA. They're identical. They both have the same cancellation language. But do they have, but HISA has no separate damages provision. You're right that HISA doesn't have a separate damages provision, but we aren't arguing about the separate damages provision here, because the plaintiffs in this case are not trying to seek double damages in the class action. What they're trying to seek is the refund. And counsel can clarify that if it turns out that that's wrong. But what we're talking about is the refund. And the question is, after you've gotten all the way to the end of a contract and it's been performed, and now you cancel it and you undo it and get a refund, is that refund actual damages? Because if it is actual damages, it can be sought in a class action under the Consumer Sales Protection Act. If it's not, it can't. Doesn't the Ohio legislature seem to suggest that where there has been a violation of PICA, that the plaintiff, based on that violation, is damaged to the extent of the amount they paid under the contract. Isn't that what seems to be the position of the legislature? And what deference, if any, should be given to that? Yeah, Your Honor, if we're moving to the question of Article III standing to sue, and in that context the question, is there any injury at all? Here, the testimony from Mr. Bartell is that he wouldn't have done anything different had he gotten the duplicate three-day notice instead of the 14-day notice, which stands to reason he chose to use the club for three and a half years. What Macy holds, and this court holds, is that a legislature can turn something that is intangible into tangible if it finds that there's a concrete interest behind it, and that the violation threatened that concrete interest. And so here, the concrete interest is not getting deceived and not getting locked in, making sure you have the free look period. Mr. Bartell admitted that there was no risk to that interest here. He testified, and again, this is his deposition. It's Record 79, and this place is 1714 in the record. He agreed there were no high-pressure sales tactics. In fact, he toured it with his wife and grandson, and he loved it. And he agreed, and the district court found, and this is page 3445, the district court found that he suffered no injury at all from not getting the three-day as opposed to the 14-day. The cancellation is where the alleged injury arises, because didn't he testify that he called to cancel, and they said, no, you have to come in. And he said he would have canceled earlier if he had not had to physically show up at the location in order to cancel. If he had had the notice as the act provided, he could have done it in writing. Correct? Your Honor, it's right that he claims that his injury is the cancellation that occurred three-and-a-half years in. Now, PICA doesn't create a right to cancel three-and-a-half years in. It creates a right to cancel in three days, and then it requires notice of that. And if you don't give the notice, then as a remedy for that procedural notice provision, it extends it. So it's true that way down the road, he argues that, you know what, I would have really liked to cancel immediately and get all my money back three-and-a-half years later. He doesn't argue that that made any difference to what he did signing up. So, for example, if he had gotten a duplicate notice, he doesn't say, I wouldn't have signed up in the first place. The reason I'm distinguishing between that, Your Honor, is that if failing to get a remedy that a statute provides is enough to create standing, then there really are no limits at all. Because, you know... Well, only if it is an injury that was in the concrete interest that the statute was enacted to protect. That's right. Okio's provision, right? That's exactly right. And so that's what's the question here. And that's exactly the right question. The question here, then, translated to that is, is not getting a duplicate three-day notice, did that create any material risk of harm to him when, in fact, he concededly got a 14-day notice and didn't want to use it? Ok, thank you. Thank you, Your Honor. Thank you. Morning. May it please the Court, Opposing Counsel. I want to begin my comments by picking up on Judge Donald's question related to the statutory provision that specifically addresses damages. And then I'll come back around and talk about the standing question. 1345.48B is the statute that Judge Donald referenced. It is a specific provision contained in PICA that instructs courts how to calculate damages for a violation of PICA. That provision appears in no other statute within the Ohio Consumer Sales Practices Act. And that makes this case different from all the Home Solicitation Sales Act contract cases and all the other cases cited by Lifetime in its papers. Now, let's talk about actual damages. The Ohio Supreme Court has defined actual damages in the Whitaker decision as a term synonymous with compensatory damages and covers all losses recoverable as a matter of right. So let's turn to Section.48B of PICA to determine what losses are recoverable as a matter of right. Point 48B is titled, the title of that section is Deceptive Acts or Practices, Damages. Specifically addressing damages. And it says, if a seller of a prepaid entertainment contract fails to comply with Division D-4A, which we all know Lifetime failed to comply with, that fact is undisputed, then the buyer may recover the amount of money due to him under that section. And we all know that under that section, Plaintiff Bartell was entitled to recover all monies paid under the contract minus $10. Now here, in oral argument and in their papers, Lifetime never addresses this statute. They completely ignore it. What they do is they try to draw analogies to the Home Solicitation Sales Act and they try to call this remedy a rescission. This is not a rescission. Rescission is an equitable remedy. This is a remedy available by law. The Ohio legislature specifically drafted it into the statute. Having addressed the damages question that Judge Donald posed, I now want to turn back and talk about the issues of standing. The first issue on appeal. Standing exists in this case for two reasons. Neither reason is our primary reason, as alleged by Lifetime in their papers, but both reasons, standing on their own, independently justify Article III standing. First, as determined by the district court, Plaintiff Bartell suffered an actual monetary injury when Lifetime refused to accept his cancellation notice, when they charged him the additional $126 over his protest, and when they never refunded the monies due, paid under the contract. Second, even ignoring that actual monetary injury, Lifetime's procedural violation alone confers standing under this court's recent decision in Macy's. So let's talk in a little bit more detail about the actual monetary injury, because again, that was the justification relied upon by the district court. In finding actual monetary harm, the district court did nothing but simply apply the plain language of the statute. There is no ambiguity to be interpreted. There is no unclear provision of the statute. The district court started by looking at point 44C, which specifically says, the free look period, as it's referred to by Lifetime Fitness, it says, that period within which the buyer may cancel the contract begins to run from the time the seller complies with PICA. Here it's undisputed. Lifetime never complied with PICA. That period never began to run. So, we turn to section 44D4 to find out what the substantive conduct of, what PICA requires for the substantive conduct of the parties. Section 44D4 says, no seller shall fail or refuse to honor any valid notice of cancellation by a buyer, and within 10 days after that notice of cancellation, refund all monies paid under the contract. We all know Lifetime did not do that either. They substantively violated the requirements of the statute. Now, to avoid this inevitable conclusion, Lifetime has proposed a remedy theory in their papers, and it was mentioned here during oral argument. This theory is not supported by the law, as I've just quoted for you, and it strains logic. This faulty reasoning is exposed by looking at a simple example. Had Lifetime, hypothetically speaking, had Lifetime accepted Plaintiff Bartell's notice of cancellation when it was submitted on December 7th, had it immediately accepted that cancellation, had it not charged him the additional $126, and had it refunded the dues paid under the contract minus $10, there would be no substantive violation of point 44D4. Because there would be no substantive violation of 44D4, you can't have a remedy. You simply can't have a remedy without having first an injury, a substantive violation. The absurdity of Lifetime's argument can also be demonstrated by looking at it from the other direction. As I've already talked about, point 48B deals with damages for the violation of point 44D4. If Lifetime's argument were to be correct, and that 44D4 provides the remedy, then point 48B would just be surplusage. It would be an extra remedy provision that's just hanging out there. That's not the way the statute's drafted. I understand it's sort of a global position that when you're dealing with a contract rescission under Ohio law and PICA and all of that, that none of this whole damage possibility, the whole issue of damages is not even a possibility that you don't get to that substantive stage. I understand that your position is contrary. Why is he so wrong in that assertion? Is it because of the language of the statute? He's applying general contract law, and you're saying we don't need to go to general contract law because we've got a scheme set out in the statute that really addresses this, and we don't get there. That's exactly the point. The Ohio legislature set forth a strict regulatory regime to govern health spa or health club contracts. They were specifically concerned with abusive practices of health clubs. They drafted PICA, and its requirements are very strict. They're very clear, but the Ohio legislature also made it very easy. They put the required language right in the statute. All Lifetime or any other health club has to do to comply is simply copy what's in the statute. So to your question, we never get to contract law because we have a specific statutory provision that's been violated. The Ohio legislature specifically said that any waiver of PICA is void as against public policy. This was a law that they wanted enforced. They specifically drafted a statute to enforce it, and they told courts that if a health club tries to get its members to waive the requirements of PICA, it's void, void as a matter of public policy. Is there a distinction between the cancellation provisions that would be a refund of all of the services, all of the payments for services over the years, and the additional $126 that was required post-cancellation? There is not a difference in the terms of the statute in the sense that the statute clearly indicates that both of those losses are recoverable as a matter of right for a violation of PICA. Their argument appears to be it works in unfairness to require a payment all the way back to the beginning for services rendered, and then that leaves the $126 question out there. Your response to that is? Yes. I guess the second part of that question would be I think the $126 is a clear, obvious injury because they canceled, and that was money charged after the cancellation. So getting to the fairness question that I think your second question alluded to, it is entirely fair. It is exactly what the legislature intended. Let's take a step back and look at what Lifetime was doing with the additional charges after cancellation. What they were doing is they were forcing members to be a member of their gym for an additional 55 days when they didn't want to be. There's argument. I wondered what was the state of the record regarding that time frame that was extended. There was discussion of a Department of Defense. There was an opportunity to bring someone in and convince them not to cancel. What is on the record regarding that? There's a couple of things on the record on that regard in the sense that when members went in to cancel, like you said earlier during our oral argument, Plaintiff Bartel wanted to do it by phone. He was told he had to come in. When he came in to cancel, he was specifically told, you have to sign this electronic screen that has provisions on it. It's called the termination agreement that Lifetime used. Within the termination agreement, Lifetime would get members to concede that they're agreeing to the additional 55 days in charges when in fact they were not, but Plaintiff Bartel was told this is the only way you can cancel. You have to sign this document. So he did. Was that the additional days, clarify for me, was that only in that termination document or was it also in the initial sign-up document? It was in the initial contract. Both. It confirmed it in the signing of the termination agreement? Absolutely correct. The initial contract set forth during the course of the class period, there were three different cancellation timeframes used by Lifetime, but they all operated generally the same in the sense that you had to give a certain amount of notice and then if you canceled, your contract would continue on for a certain period of time. For the entire class, that period of time ranges between 25 days and 60 days. I want to go back to the issue of the injury again. So prior to Lifetime charging him the money after he canceled, what was his concrete injury before they initiated that subsequent charge? Was it the having to come in? Was it the pressure to re-up? What was the injury? Well, according to the district court's underlying holding, which is now on appeal, the district court found there was no concrete injury prior to him coming in to cancel and them not honoring the cancellation. In the lower court, our position was that there was still a concrete injury because PICA provides specific provisions. There's a number of them. Members are supposed to be orally informed about their rights to cancel, which it's undisputed was not done in this case. Again, they're supposed to be provided the duplicate tear-off notices of cancellation, which they were not provided here. So there were a number of substantive violations of PICA that we argued in the district court that constituted concrete injuries. And therefore, in our initial motion for class certification and in our initial complaint, we had two classes. We had a class of people that had already canceled and had suffered that injury at the time of cancellation. We also had a class of people that were current members and were denied the substantive rights that PICA provides, even though they were still members of the gym. The lower court, again, did not agree with our arguments on that point. So up on appeal, we only have the class of individuals that have canceled. I only have a few minutes remaining, so I want to close with a couple of thoughts related to both the standing issue and damages. Lifetime's primary argument, really, and it was touched on by Justice's question, is one of fairness. And again, as I've already mentioned, Lifetime operated numerous gyms in Ohio, tens of thousands of members, never once consulted the Ohio law that governs their business. They either, well, they did one of two things. They either consulted it and ignored it, or they didn't look into it at all. And this court should not have sympathy for a corporation that operates in such a manner. A district court sitting in diversity must apply the substantive laws of the state in which the district court sits. Here, Ohio law controls, and the Ohio legislature has specifically said that Plaintiff Bartell has standing, and it's specifically said how his damages should be calculated. I'd like to quote your colleague, Chief Judge Cole, in the recent decision of Premium Freight Management versus PM Engineered Solutions. In that case, he opened his opinion by saying, federal courts sitting in diversity may question the wisdom of state law but they're powerless to change them. Here in this case, we have no ambiguity in the statute. There's nothing for this court to interpret. It must simply apply the laws of Ohio to the undisputed facts of this case. And when the court does that, it will result in an affirmance of the lower court's decision. Thank you. Your Honors, we agree 100% that Ohio law controls here. And here's the Ohio law that matters. The Ohio Supreme Court said that any class action brought under this statute, the only remedy available is actual damages. 30 years of Ohio cases hold that rescission and refund is not actual damages. The Broglie case that's been brought up is a case that they cite as an individual case. It's not a class action. It did not address the question whether a rescission and a refund is actual damages. Here is the Frey case that we cited in our brief. It's at 608 NE 2nd at 800-801. It says the return of the purchase price to the consumer after a rescission or cancellation does not constitute damage under Chapter 1345. What do we do with that language of the statute though? That counsel for the... Yes. It's Section 1345.48. The statute says two things. It says violating this is a violation of the Consumer Sales Protection Act. So you get those remedies. And you can get double the amount as damages. The double damages plaintiffs concede at page 32 of their brief they cannot recover in a class action. What they're trying to recover is the refund. And to repeat Frey, the binding Ohio law is that a refund after a rescission is not damages under Chapter 1345. You can get it, you can seek it in an individual case. And just to be clear, if Mr. Bartel or anyone else in an individual case wants to try to get a complete refund even though they got everything they were promised after that or a partial refund they're free to do that in an individual case. They cannot do it in a class action because as the Supreme Court found in Felix the legislature made a policy decision not to have huge punitive awards in class actions that are not tied to actual harm. If you're going to sue in a class action the only thing you can get is actual damages for actual harm. They argue that this rule that rescission and damages are mutually exclusive cannot apply to PICA. That's wrong. The first case that we cited is the Mid-America case from 1989. It applies a PICA claim brought under the Consumer Sales Protection Act exactly the same structure as here and it sets out the same holding that rescission and damages are mutually exclusive. You have to choose one or the other. You have to elect one or the other. Mr. Bartel here is electing to try to get the big thing, the rescission. He can do that in an individual case under Ohio law. But just like he said in a federal court under Erie you apply Ohio law as you find it. Isn't the distinction drawn by the Ohio Supreme Court the treble statutory damages are not awarded in class actions? It is true that you cannot get treble statutory damages or double. Isn't that the distinction that Whitaker draws as opposed to the distinction that you're seeking to draw? In Whitaker the issue was treble versus double. That was the issue there. But in these nine other cases that we've cited it was precisely the damages versus rescission question. The reason I say this if you go straight to the statute it's 134509B and it says the consumer damages. That is a more even a more fundamental difference than the difference between actual and double. The holding of the Supreme Court in Felix is that the only thing you can get in a class action is actual damages. This court said the same thing in Gerbach. And the law says The laws that those cases were addressing aren't they distinct from the particular provision here? I understand your argument and your concern. But the question is is that directed to a court's determination such that the court must look every time to the particular situation and then can overcome the intent of the legislature? Or is this a legislative question? Your opposing counsel would argue that this is the way the statute was formulated and that there was a reason to do that. And one of the reasons that we might see here you know Mr. Bartell comes in he signs a screen he takes nothing back with him. He stayed on but perhaps the next person who walks in the door to whom that happens doesn't realize there is an ability to automatically rescind. And that's what you see where my question is going? This is not just about this case. This is about what the Ohio legislature did and why they intended it perhaps to be a harsh remedy in order to assure protection of Ohio consumers. Yeah I understand where your honor is going and I understand how that relates to the question of whether you have standing to be here at all. What I've been addressing is the different question also reflecting a policy judgment of what you can get in a class action versus what you can get in an individual action. And to address your honor's question very directly PICA, the provisions here are part of the Consumer Sales Protection Act. They're all part of chapter 1345. They are enforced through the provisions that I've been quoting 1345-09 and there isn't and so the limitation the difference between class and individual is something that absolutely applies here. I said Ohio law has applied it in the Mid-America case in a PICA case that we've cited here and they've conceded all along that this is brought under the Consumer Sales Protection Act and it's limited there. So I think your honors go through and read 30 years worth of cases. You're going to find that rescission and a refund is not actual damages from this. We'll take a look. Thank you your honor. For your arguments the case will be taken under advisement and we appreciate your arguments and your briefing and you will have a decision in the due course. Thank you so much.